State, *ex rel.* Atlantic Greyhound Lines, Inc., a Virginia Corporation, v. B. F. Mizell, as Motor Vehicle Commissioner, J. M. Lee, as Comptroller, and W. V. Knott, as Treasurer. of the State of Florida.

174 So. 216.

Division A.

Opinion Filed May 1, 1937.

*Waller & Pepper,* and *Julius F. Parker,* for Relator.

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *W. P. Allen,* Assistant Attorneys General, and *Philip D. Beall,* for Respondents.

TERRELL, J.—Relator Atlantic Greyhound Lines, Incorporated, a Virginia Corporation, was on the first day of January, 1934, engaged in interstate commerce as a motor bus carrier in the State of Florida under certificate of public convenience and necessity issued by the Railroad Commission subsequent to the effective date of and pursuant to the National Motor Vehicle Act.

From January 1, 1934, to January 1, 1936, Relator paid the Motor Vehicle Commissioner of the State of Florida registration fees in the sum of $16,790.09, upon its motor vehicles used in interstate commerce over the highways of the State. It also complied with Chapter 14764, Acts of 1931, Laws of Florida, imposing mileage taxes on all motor

bus carriers whether doing an interstate or an intrastate business over the highways of the state.

In September, 1936, Relator files its claim with the Motor Vehicle Commissioner as authorized by Chapter 15625, Acts of 1931, as amended by Section 3, Chapter 16085, Acts of 1933, for a refund of fees in the sum of $4,218.91. The Motor Vehicle Commissioner denied Relator's claim. In November, 1936, on petition of Relator, alternative writ of mandamus was issued from this court commanding the Motor Vehicle Commissioner to satisfy himself of the correctness of Relator's claim and file with the Comptroller of the State a certificate in writing that said claim or so much thereof as is found to be correct is due and payable to Relator or show cause for his failure or refusal to do so. Respondent moved to quash the alternative writ. The cause now comes on to be disposed of on the issues thus made.

Preliminary to this discussion, it is well to bear in mind that Chapter 14764, Acts of 1931, provides for the regulation of motor vehicles for hire and imposes a mileage tax graduated according to the number of passengers carried. Chapter 15625, Acts of 1931, amends the designated sections of the Revised General Statutes relating to the regulation and licensing of motor vehicles and imposes a registration fee on them whether for hire or private use, graduated according to weight. Chapter 16085, Acts of 1933, in so far as applicable here attempts to amend Section 3 of Chapter 15625, Acts of 1931, relating to the regulation and licensing of motor vehicles.

Relator bases its claim for refund on the fact that Chapter 15625, Acts of 1931, imposes a license registration fee on all motor vehicles operating in the State whether for hire or private use, that Section 3 of Chapter 16085, Acts

of 1933, attempts to amend Chapter 15625, Acts of 1931, that said amendment is unconstitutional and void and being so, Chapter 15625, Acts of 1931, providing for such refunds is the prevailing law on the subject.

The pertinent part of Chapter 14764, Acts of 1931, imposing a mileage tax based on the seating capacity of the motor vehicle is as follows:

"Section 16. There shall be collected by the Comptroller of the State from every auto transportation company as herein defined to which has been granted a Certificate of Public Convenience and Necessity or a Permit authorizing it to engage in the transportation of passengers, or freight, or both, a mileage tax of one-half cent (½c) per mile on all buses with a capacity of ten passengers or less and a mileage tax of three-fourths cent (¾c) per mile on all buses with a capacity of not more than twenty passengers nor less than ten passengers, and a mileage tax of one cent (1c) per mile on all buses of the capacity of more than twenty passengers; and a mileage tax of one cent (1c) per mile on all truck or trailers with a load capacity of less than 5,500 pounds, and tax of two cents (2c) per mile on all trucks or trailers with a load capacity of 5,500 pounds, or more coming within the terms of this Act for every mile traveled by the motor vehicles of such auto transportation company over the public highways of this State."

Section 26 of Chapter 14764, Acts of 1931, provides that all mileage taxes collected thereunder shall be deemed to be compensation for the public highways and is as follows:

"Section 26. All mileage taxes prescribed by this Act and all such taxes imposed on auto transportation companies using the public highways in the transportation of persons or property for compensation shall be deemed to be compensatory for the use of the public highways of this State

by auto transportation companies taxed under the provisions of this Act and as a fair contribution to the cost of constructing and maintaining the public highways of this State and the administration and enforcement of this Act and all regulations and restrictions imposed hereby and authorized to be imposed by the Commission are declared to be for the purpose of conservation of the State's property and in the interest of safety in the use of its highways."

Section 3 of Chapter 15625, Acts of 1931, as originally enacted authorized collection in advance of the registration fee on any motor vehicle operating in interstate commerce for the use of the highways but it was provided that the person, firm, or corporation paying the same should be entitled to a refund of the entire amount with interest upon making payment to the state for the mileage actually traveled over the state's highways to be paid for at four cents per mile each way which rate was determined by said act to be reasonable and just for the use of the state's highway system. Proof of such mileage was made to the motor vehicle commissioner who was required to ascertain its correctness and certify his finding to the Comptroller who was required to draw his warrant for settlement accordingly.

Subdivisions (a) and (b) of Section 4, Chapter 15625, Acts of 1931, under which Relator seeks to recover, have not been amended or repealed but provide in substance that the State Motor Vehicle Commissioner pay into the State Treasury to the credit of a special fund to be known as the "Motor Vehicle Refund Fund" such sums as may accumulate in his hands on account of registration of motor vehicles not having been perfected during the previous year and when it is made to appear that a refund is due any person under the law governing the registration and licensing of motor vehicles and the State Motor Vehicle Commission

is satisfied of the correctness thereof, he shall so certify to the Comptroller who shall draw his warrant for each refund against the Motor Vehicle Refund Fund in favor of the person for whom found to be due.

It thus appears that the Legislature of 1931, by Chapter 14764, laid a mileage tax of one cent per mile on all motor carriers in the class of Relator for the use of the public highways. But the same Legislature enacted Chapter 15625, which found as a fact that four cents per mile was a just and reasonable compensation to charge carriers engaged exclusively in interstate commerce for the use of Florida highways and when Chapter 15625 was amended in 1933 by Section 3 of Chapter 16085, the Legislature again declared that four cents per mile was "determined and declared to be a reasonable and just compensation to be charged and collected for the use of the improved highway system provided by the State, but in the same Section of the 1933 Act, refunds of sums paid as registration fees in excess of four cents per mile were allowed only for "casual or transient trips" in interstate commerce.

The Relator is exclusively an interstate carrier but operates on regular schedule rather than on "casual or transient trips" and is therefore precluded from recovering any refunds, notwithstanding the several declarations of the Legislature to the effect that four cents per mile was a reasonable charge to impose on interstate carriers for the use of the state highways. The result of so limiting refunds has been that Relator is required to pay six and one-half cents per mile for each and every mile that its motor vehicles traverse Florida highways.

In fine, by Chapter 15625 and Chapter 16085, the Legislature made a finding of fact that four cents per mile was a reasonable charge to impose on interstate carriers

for the use of the state's highways, but by Section 3 of the latter Act, it actually imposed a tax contrary to its finding and by Section 4 of the former Act, it diverted a portion of the proceeds to a fund that bears no relation to the purpose for which it was collected. The pertinent part of Section 4 is as follows:

"Section 4. * * * All monies paid into the State Treasury under the provisions of law relative to the licensing of motor vehicles, except such part as shall be first set aside by the State Motor Vehicle Commissioner and placed in the "Motor Vehicle Expense Fund" to pay for number plates, postage, and transportation charges on same and the actual clerical work and operating expenses required under the law to administer the provisions of this Chapter shall be apportioned and appropriated as follows: The entire proceeds shall be paid into the State Treasury to the credit of the County School Fund."

It is in effect contended that Chapter 16085, Acts of 1933, is violative of the Commerce Clause (Section 8, Article 1 of the Federal Constitution) and the due process and equal protection clauses (Section 1, Article XIV, of the Federal Constitution) because it imposes an unwarranted burden on interstate commerce and diverts the proceeds of the registration fee collected thereunder to a purpose that has no relation to the construction, use, and regulation of the state's highways.

It is settled law that in the exercise of its police power, if Congress has not preempted the field, a state may in the interest of public safety prescribe uniform regulations for the operaton of automobiles on the public highways whether moving in interstate or intrastate commerce. Such regulation is accomplished by requiring the registration of motor vehicles, the licensing of drivers and by charging a

reasonable fee therefor graduated by horsepower, weight, or some other proper standard. The reasonableness of such charges in so far as they affect interstate commerce are subject to review by the courts and to regulation by Congress.

A state cannot impose a tax on interstate commerce but where it has furnished improved highway facilities over which interstate or intrastate commerce is carried on, it may impose on any and all motor vehicles engaged in either, a charge for the use of its highways but such a charge must bear a fair relation to the cost of construction, maintenance, and policing of the highways. In so far as such a charge affects interstate commerce, it will not be sustained unless it is made to affirmatively appear that it is imposed only as compensation for the use of the highways or to pay the expense of regulating motor traffic on them. Hendrick v. Maryland 235, U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. 222; Clark v. Poor, 274 U. S. 554, 47 Sou. Ct. 702, 71 L. Ed. 1199; Interstate Transit Co. v. Lindsey, 283 U. S. 183, 57 Sup. Ct. 380, 75 L. Ed. 953; Redball Transit Co. v. Marshall, 8 Fed. (2) 635, 273 U. S. 782, 47 Sup. Ct. 569, 71 L. Ed. 890; Prouty v. Coyne, 55 Fed. (2) 289.

We interpret the net holding in these cases to be that in the absence of congressional legislation on the subject, the state may impose a reasonable tax on motor vehicles engaged wholly or partially in interstate commerce over its highways but such tax can be used only for the purpose of regulation, maintenance, improvement, repair, or a fair return on construction. Unless the contrary is made to appear, the action of the state in imposing the tax will be treated as within its power but if challenged, the burden

134

is on the state to show that the tax is within the purposes stated. While the general form of such taxes is by license or registration fee, any form that has a direct relation to the use and regulation of the highways is valid  Any tax which savors of a privilege or charge for engaging in interstate commerce rather than as compensation for the use of the highways will be treated as invalid. Interstate Transit v. Lindsey, *supra.*

Under Section 8, Article I of the Federal Constitution, Congress is given exclusive power to regulate commerce with foreign nations and among the several states and under Section 1 of Article XIV, the State is prohibited from depriving any person of life, liberty, or property without due process of law, or from denying any person within its jurisdiction the equal protection of the law.

The burden on interstate commerce complained of arises from the fact that Relator is engaged exclusively in interstate commerce, that it operates from the Georgia-Florida Line to Jacksonville and return on regular recurring schedule approved by the Railroad Commission, that its business is seasonal, affected by the tourist season during which it is required to furnish extra buses, that notwithstanding the repeated determination of the Legislature that four cents per mile is a reasonable charge against interstate and other carriers for the use of Florida Highways by the enactment of Chapter 16085, the refund provision of Chapter 15625, Acts of 1931, was repealed. The effect of this repeal was to force Relator to pay in addition to the mileage tax required by Chapter 14764, a registration fee equivalent to six and one-half cents per mile, a large portion of which was diverted to a purpose that bears no relation to the use of the highways.

The mileage tax imposed by Chapter 14764, Acts of 1931,

and the registration tax imposed by Chapter 15625, Acts of 1931, were both laid for the use of the highways. As to interstate commerce, such taxes cannot be demanded except as reimbursement for the expense of providing road facilities or of regulating commerce over them. Engels v. Marf, decided March 1, 1937, Advanced Opinions United States Supreme Court, March 15, 1937, page 439. It is not required that the amount charged for this purpose match the cost and regulation of the facilities to mathematical exactness but if it exceeds that amount appreciably it becomes a burden on interstate commerce that will not be permitted. In this case, it was repeatedly found that four cents per mile was a sufficient charge yet the alternative writ shows that the repeal of the refund provision as to Relator forced it to pay more than six cents per mile for every mile traveled. It is not shown or contended that there is any basis for making a distinction between interstate carriers operating on regular schedule and those operating on "casual or transient trips" yet the latter have the benefit of the refund provision of the Act while the former do not.

Under this state of facts there is a clear discrimination between the amount exacted of Relator and that exacted of other carriers in like situation for the use of the highways, not only that, but Relator is required to pay an amount appreciably more than was declared by the Legislature to be reasonable and compensatory for the use of them. It is affirmatively shown that the fee charged is not to be applied for the purpose collected but is diverted to another and different use that has no relation to the purpose for which it was collected.

Respondents rely on Morf v. Bingaman, 298 U. S. 407. 56 Sup. Ct. 756, 80 L. Ed. 1245, and Ingels v. Morf, *supra,*

to support their contention. These cases grew out of a fee exacted in New Mexico and California for the privilege of transporting motor vehicles on their own wheels over the public highways. A tax in other words for the privilege of using the highways rather than for the use of them. The tax was upheld because there was a finding of fact that automobiles so transported resulted in additional damage to the highways as well as hazards in policing. In the case at bar, the charge was for the use of the roads and it is affirmatively shown that it was excessive.

A uniform registration fee imposed on both interstate and intrastate carriers does not place an undue burden on interstate commerce merely because the interstate carrier has less occasion to use the roads than the intrastate carrier. The privilege is granted without limit and the one who uses it less cannot complain, but when the tax is deliberately imposed in a manner that under the enforced circumstances of the case creates an unfair discrimination, that presents another question. Aero Mayflower Transit Co. v. Georgia Public Service Commission, 295 U. S. 285, 55 Sup. Ct. 709, 79 L. Ed. 1439.

As to exclusively interstate commerce, any tax imposed on motor vehicles so engaged is a burden thereon and will not be sustained unless made to affirmatively appear that it is imposed solely as compensation for the use of the highways or for paying the expense of regulating motor traffic over them and it must be shown to be not more than reasonably necessary for that purpose and must be shown to have been applied for the purpose collected. Interstate Transit Company v. Lindsey, 283 U. S. 183, 51 Sup. Ct. 380, 75 L. Ed. 953.

In the Act under review, it is declared that the registration fee shall be deemed to be compensatory for the use

of the public highways of the state by motor transit and as a fair contribution to the cost of constructing and maintaining them but as heretofore shown, it is appropriated to the public schools, a purpose foreign to that for which collected. If the fee was shown to be reasonable and an equivalent amount from other sources was shown to be appropriated and used for the purpose, it was collected, there would be some basis for upholding it, but to uphold it as presented would open the way for flagrant abuse and discrimination. It follows that Chapter 16085, Acts of 1933, is invalid as applied to Relator.

Having reached the conclusion that Chapter 16085, Acts of 1933, is void as to Relator, it follows that Chapter 15625, Acts of 1931, which the latter Act amended, is the controlling law on the subject. Lipscomb v. Gialorakis, 101 Fla. 1130, 133 So. 104; Lawrence v. Miss. State Tax Commission, 162 Miss. 138, 137 So. 503, 286 U. S. 276, 52 Sup. Ct. 556, 76 L. Ed. 1102; Opinion of Justices, 269 Mass. 611, 168 N. E. 536, 66 A. L. R. 1477; 59 C. J., page 886.

The motion to quash the alternative writ is accordingly overruled.

ELLIS, C. J., and BUFORD, J., concur.

WHITFIELD, P. J., and BROWN, and DAVIS, J. J., concur in the opinion and judgment.