ANTHONY DeRUBBO ET AL. *v.* AETNA INSURANCE
COMPANY

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued June 2—decided June 25, 1971

*Robert L. Trowbridge,* for the appellant (defendant).

*Bernard E. Francis,* for the appellees (plaintiffs).

THIM, J.  This action was brought pursuant to the provisions of § 38-175 of the General Statutes to recover from the defendant, which had issued to Frank T. Erardi, doing business as Erardi Sales and Service, Inc., a garage liability policy, the amount of judgments obtained by the plaintiffs against Joseph P. Cannatelli, Sr., by reason of his negligent operation of an automobile purportedly in the possession of Erardi.  The jury returned a verdict for the plaintiffs.  The defendant then moved to set aside the verdict and for a judgment notwithstanding the verdict.  The motions were denied and judgment was rendered on the verdict.  The defendant has assigned as error the denial of his two motions and portions of the charge in which the court construed provisions of the policy and charged on ownership and transferral.

The basic facts of this case are not in dispute.  On July 10, 1964, Cannatelli, Sr., was involved in an automobile accident with the plaintiffs.  At the time of the accident he was operating a motor vehicle with dealer registration belonging to Erardi.  Four to six weeks before the accident Joseph Cannatelli, Jr., paid Erardi the full purchase price of the car in cash, plus the registration fee and taxes.  Cannatelli, Jr., received from Erardi a bill of sale and the vehicle.  Cannatelli, Jr., had made arrangements to have liability coverage on the car effective when the car was registered.  The car could not be registered until he received a certificate of title.  He visited Erardi almost daily in an attempt to obtain the certificate of title.  The vehicle was never returned to Erardi after payment by Cannatelli, Jr. On the day of the accident, the still unregistered vehicle was being used by Cannatelli, Sr., to deliver produce for his employer.  As a consequence of the

accident the plaintiffs instituted suit against Cannatelli, Sr., for their personal injuries. As noted, they were successful. The defendant admitted that it had a garage liability insurance policy issued to Erardi in full force and effect at the time of the accident. It denied, however, that Cannatelli, Sr., was insured under that policy. It admitted that it refused to pay the judgments rendered against Cannatelli, Sr.

One of the elements of a cause of action brought under § 38-175 is that the judgment rendered is against a person who was insured by the defendant against liability on the policy. *Skut* v. *Hartford Accident & Indemnity Co.*, 142 Conn. 388, 393, 114 A.2d 681. Thus, the basic issue in this case is whether the policy issued by the defendant to Erardi covered the operation of the vehicle by Cannatelli, Sr. Whether it did must be determined from the language of the policy.[1]

The defendant excepted to the court's charge concerning the definition of an "insured" as specified in the policy. The plaintiffs claimed that there was coverage under the policy because Cannatelli, Sr., was operating the vehicle with the permission of Erardi. The defendant, however, claimed that Cannatelli, Sr., was not an insured under the provisions of the policy because Erardi had transferred possession of the vehicle to Cannatelli, Jr., pursuant to an agreement. The policy specifically

---

[1] Pertinent excerpts from the policy read as follows:

"Garage Operations Hazard. The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations.'
Automobile Hazards.
1. All Automobiles
(a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automo-

states: "[A]ny person or organization other than the named insured with respect to any automobile . . . possession of which has been transferred to another by the named insured pursuant to an agreement of sale" is not an insured within the terms of the policy. The court charged the jury that the construction and interpretation of the policy was a question of law for the court. It further charged that the court cannot import into a policy an ambiguity where none exists and give to its language a meaning which the parties never intended. The court then recited the exact language of the provision of the policy in question and stated that "it means just what it says." This statement was followed by the charge: "If . . . the automobile which Joseph Cannatelli, Sr. was driving had been transferred to another by the named assured pursuant to an agreement of sale then the person driving this car is not an insured under this policy according to this clause."

bile owned by or in charge of the named insured and used principally in garage operations, and

．　　　．　　　．　　　．　　　．

Persons insured. Each of the following is an insured under Part I, except as provided below:

．　　　．　　　．　　　．　　　．

(3)　With respect to the Automobile Hazard:
(a)　any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph 1 (a) or 2 of the Automobile Hazards, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

．　　　．　　　．　　　．　　　．

None of the following is an insured:

．　　　．　　　．　　　．　　　．

(iii) any person or organization other than the named insured with respect to any automobile (a) owned by such person or organization or by a member (other than the named insured) of the same household, or (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale."

Thereafter, the court recited to the jury the claims made by the plaintiffs, namely: That Erardi never transferred the car to Cannatelli, Jr., because it was never listed in his name; that Erardi never furnished a certificate of title; that because the car bore dealer's plates it was not Cannatelli, Jr.'s car; that it still belonged to Erardi or was in his control. The court then charged the jury that registration under our law was a declaration of ownership, that it was merely evidence of ownership to be considered in connection with other evidence on that issue and was not conclusive as to title. Finally, the court charged that it was for the jury to decide whether Erardi transferred the car pursuant to an agreement of sale. In effect, the jury were instructed to read out of the clause the word "possession," to substitute "transfer" and to attribute different meanings to "transfer." From the instructions, the jury could have held that the clause meant to transfer "ownership" of the car rather than "possession," a distinctly different concept.

Since, in this case, the facts are not in dispute, the construction and legal effect of the provisions of the policy are questions of law for the court, even in a jury trial. *Bria* v. *St. Joseph's Hospital,* 153 Conn. 626, 632, 220 A.2d 29. It is the court's duty to construe the provision of the policy in question and to instruct the jury as to the correct interpretation. See *Libero* v. *Lumbermens Mutual Casualty Co.,* 143 Conn. 269, 274, 121 A.2d 622. When the language of a policy is plain and unambiguous the terms must be accorded their natural and ordinary meaning. *LaBonte* v. *Federal Mutual Ins. Co.,* 159 Conn. 252, 256, 268 A.2d 663; *Lyon* v. *Aetna Casualty & Surety Co.,* 140 Conn. 304, 90 A.2d 141. There is nothing ambiguous about the meaning of the lan-

guage appearing in the disputed provision of this policy. Erardi transferred physical possession of the car to Cannatelli, Jr., pursuant to an agreement of sale. None of the parties contends to the contrary. The plaintiffs concede that Cannatelli, Jr., paid the full price, together with a sum of money to pay taxes and the registration fee, and he received in return a bill of sale for the car. The only part of the transaction to be completed was delivery of a certificate of title. If "agreement of sale" were construed to mean "fully performed agreement of sale," not only would the language of the policy be distorted but the clause would become a nullity. It would be unjust and inequitable to hold the defendant liable for damages inflicted by a motor vehicle which had been sold by the insured and had completely and irrevocably passed from his right of possession and control, simply because the insured had neglected to comply with a provision of the motor vehicle title and registration law by failing to execute and deliver a muniment of title prior to the occurrence of the accident although the sale and transfer had been completed in every other respect. See *Hayes* v. *Hartford Accident & Indemnity Co.,* 57 Tenn. App. 254, 417 S.W.2d 804; *Grange Mutual Casualty Co.* v. *Clifford,* 41 Ohio Op. 2d 433, 230 N.E.2d 686; *Rudes* v. *Hartford Accident & Indemnity Co.,* 32 App. Div. 2d 575, 299 N.Y.S.2d 86.

Not only had possession been transferred but title had also passed pursuant to the Uniform Commercial Code. "Unless otherwise explicity agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different

time and place." General Statutes § 42a-2-401 (2);
see *Providence Electric Co.* v. *Sutton Place, Inc.,*
161 Conn. 242, 247, 287 A.2d 379.

In view of the fact that the policy plainly speaks
of possession, and since it is uncontested that Can-
natelli, Jr., had obtained possession of the car four
to six weeks before the accident, the court erred in
not charging the jury, as a matter of law, that Can-
natelli, Sr., was not an insured under the policy.
Further, even if a passing of title were required,
which it was not, title had passed under the provi-
sions of the Uniform Commercial Code.

The plaintiffs claim that §§ 14-58, 14-60, 14-61 and
14-112 apply to this action. They do not discuss the
manner in which they apply. Section 14-58 deals
with car dealer or repairer registrations. There-
under, dealers or repairers are permitted to obtain
general registration for use on any vehicle in their
custody "until sold." This is modified by § 14-60,
which permits the use of dealers' or repairers'
marker plates on vehicles which have been sold, when
the purchaser's "registration . . . is pending," up to
fifteen days in any year, provided that the purchaser
proves to the dealer that he has appropriate insur-
ance. While it appears that these statutes have been
violated, they are directed to the dealers or repair-
ers. Their mere violation would not create liability
on the part of the defendant. Even if Erardi were
liable because of his violations, the defendant would
only be liable if the policy covered this situation. It
did not. It would appear that §§ 14-58 and 14-60
could have been employed as evidence that Erardi
was the owner of the vehicle bearing his registration
markers. See *Scalora* v. *Shaughnessy,* 151 Conn.
252, 256–57, 196 A.2d 763. Since, however, this
policy ceases to apply to vehicles once there is a

transfer of possession, even if the jury found Erardi to be the owner of the vehicle, the policy would not apply, possession having been transferred. Of course, as noted, a finding that Erardi was the owner of the vehicle would be contrary to law. § 42a-2-401 (2).

Section 14-61 deals with temporary transfers of registration and the issuance of new registration by authorized dealers. There is nothing in this case to indicate that this statute applies in any manner. If Erardi had issued or procured a registration for Cannatelli, Jr., this case would not be before us. Section 14-112 deals with the requirement of proof of financial responsibility where certain statutes are violated. The record discloses one violation of the statutes mentioned. That violation pertains to the use of dealers' plates pursuant to § 14-60. See General Statutes § 14-147. Our comments as to § 14-60 are thus also appropriate here. Violation of this statute, therefore, has no effect on the liability of this defendant.

There is no merit to the plaintiffs' claim that the car was being operated, with permission, for garage purposes. Cannatelli, Jr.'s father was using the car to deliver produce for his employer. Assuming, arguendo, that Cannatelli, Sr., had permission from Erardi to use the car, there was still no coverage because possession of and title to the car had been transferred by Erardi to Cannatelli, Jr., pursuant to the agreement of sale.

The plaintiff also claims that the defendant, by not returning form SR-21 to the motor vehicle department pursuant to §§ 14-116 and 14-117, cannot now deny coverage. There is nothing in the defendant's appendix concerning this matter, nor is there anything in the record which indicates that the court

charged on this claim. The plaintiff has not printed an appendix. We are, therefore, unable to consider this claim.

In this case, the court delegated its responsibility on a question of law to the jury as a question of fact. In light of all the evidence, the court, as a matter of law, should have rendered judgment for the defendant notwithstanding the verdict.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant in accordance with its motion for a judgment notwithstanding the verdict.

In this opinion the other judges concurred.